**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4165**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ODERE RAZAK SULEITOPA,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:16-cr-00168-JFM-1)

Submitted: February 27, 2018                                      Decided: March 7, 2018

Before GREGORY, Chief Judge, and KEENAN and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James Wyda, Federal Public Defender, Meghan Skelton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Stephen M. Schenning, Acting United States Attorney, Judson T. Mihok, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Odere Razak Suleitopa was convicted after a jury trial of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1343 (2012), and aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1028A(a)(1) (2012). The district court sentenced Suleitopa to 63 months' imprisonment. Suleitopa appeals, raising three challenges to his convictions. We affirm.

Suleitopa contends first that the district court erred under Fed. R. Evid. 701 in admitting opinion testimony given by special agent Van Wie—the Government's case agent—about clothing worn by and the identity of the suspect depicted in surveillance video of fraudulent credit card purchase transactions because that testimony was not based on personal knowledge or helpful to the jury. Under Rule 701, lay opinion testimony is admissible if (1) it is "rationally based on the witness's perception," (2) is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) it is "not based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid.] 702." Admission of evidence under Rule 701 is reviewed for abuse of discretion. *United States v. Min*, 704 F.3d 314, 324-25 (4th Cir. 2013). A district court abuses its discretion "if its [admission] decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (internal quotation marks omitted).

Lay opinion testimony under Rule 701 must be based "on personal knowledge." *Id.* (internal quotation marks omitted). "[A]dequately build[ing] a foundation for lay testimony" requires that the testimony "be based on the perception of the witness." *Id.* at

2

292-93 (internal quotation marks omitted). Indeed, "[a] critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in possession of the jurors." *Id.* at 293 (internal quotation marks omitted). "Therefore at bottom[,] Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." *Id.* (internal quotation marks, alteration, and ellipsis omitted). A lay witness may give an opinion concerning the identity of a person depicted in surveillance imagery if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the imagery than is the jury. *United States v. Robinson*, 804 F.2d 280, 282 (4th Cir. 1986).

After review of the record and the parties' briefs, we conclude that the first two requirements of Rule 701 were satisfied. Agent Van Wie was the lead investigator for the Government in this case. He recovered and catalogued all of the evidence adduced at trial, including the surveillance video, and matched credit card purchase receipts to time stamps in the video. He spent, as a "low estimate," eight to ten hours reviewing video surveillance. His testimony regarding similarities in clothing on the suspect depicted in the surveillance video and still images taken from that video was rationally based on his own personal perception about events depicted in them in light of his review of them and his recovery and cataloguing of all the evidence in the case. Further, Suleitopa has not disputed the Government's assertion that agent Van Wie was personally aware of what he looked like after having been present at his pre-trial initial appearance, arraignment, and motions hearings. Given this and the fact that the suspect depicted in the surveillance video wore brimmed hats that obscured his face from surveillance cameras, Van Wie

3

qualified as a person more likely to correctly identify Suleitopa as the person in the surveillance images, and his testimony was "helpful to the jury on the issue of fact of whether the appellant was the person shown in the [store] surveillance." *Robinson*, 804 F.2d at 282. The district court, therefore, did not abuse its discretion in admitting the testimony.

Next, Suleitopa contends that the district court erred in denying his motion for a mistrial. We review a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009). For a court's denial of mistrial motion to amount to an abuse of its discretion, the defendant must show prejudice; prejudice does not exist, however, "if the jury could make individual guilt determinations by following the [district] court's cautionary instructions." *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008) (internal quotation marks omitted). Suleitopa argues that agent Van Wie's testimony prejudiced him because the district court never instructed the jury that the testimony was improper and was to be disregarded. In the absence of any curative instruction doing so, Suleitopa contends, a mistrial was appropriate and the district court abused its discretion in denying his request for one.

We conclude that Suleitopa's challenge to the district court's denial of his motion for a mistrial fails because the underlying premise on which it rests—that Van Wie's testimony was improperly admitted—fails as without merit. Further, given the abundant evidence in the record linking Suleitopa to the fraudulent purchase transactions and the district court's explicit instructions to the jury that the Government had to prove his

4

identity as the perpetrator of the crimes and that any reasonable doubt it had about whether Suleitopa was the perpetrator required it to return a not guilty verdict— instructions the jury is presumed to have followed, *e.g.*, *United States v. Chong Lam*, 677 F.3d 190, 204 (4th Cir. 2012)—Suleitopa was not prejudiced by the district court's denial of his mistrial motion.

Finally, Suleitopa argues that the Government's rebuttal closing argument was improper.  This is so, in Suleitopa's view, because counsel for the Government improperly informed the jury that he had been stripped of his presumption of innocence. As Suleitopa acknowledges, he did not raise a contemporaneous objection to this portion of the Government's rebuttal argument.  We therefore review this claim for plain error. *United States v. Baptiste*, 596 F.3d 214, 220, 226 (4th Cir. 2010).  On plain error review, Suleitopa bears the burden of establishing the presence of an error that was plain and that affected his substantial rights.  *Id.* at 220.  With regard to the third element of this standard, Suleitopa must show that the error "actually affected the outcome of the district court proceedings."  *Id.* (internal quotation marks omitted).  "However, even if the error is plain and affects substantial rights, we do not exercise our discretion to correct the error unless a miscarriage of justice would result or the error seriously affects the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id.* (internal quotation marks, alterations, and ellipsis omitted).

With respect to claims of prosecutorial misconduct in connection with closing argument, the appellant "must show that the remarks were improper and that they prejudicially affected the defendant's substantial rights so as to deprive the defendant of a

fair trial." *Id.* at 226 (internal quotation marks omitted). In determining whether improper remarks require reversal, we consider:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters [;] (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel [;] and (6) whether curative instructions were given to the jury.

*Id.* (internal ellipses omitted). "The ultimate question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 227 (internal quotation marks omitted). Suleitopa takes issue with the prosecuting attorney's statement in rebuttal argument that, when the jury formulated its verdict and began deliberating in the case, it would "realize that the defendant has been stripped of the presumption of innocence."[*]

---

[*] During closing argument, defense counsel asserted that the Government had not met its burden to prove Suleitopa's identity as the perpetrator of the charged offenses beyond a reasonable doubt. In rebuttal, counsel for the Government stated in part as follows:

> [W]ith regard to that burden beyond a reasonable doubt, we don't shrink from that burden. We love that burden. It's one of the cornerstones of our system. And the presumption of innocence, we don't shrink from that, that's true. But when you go back to deliberate and consider this evidence and weigh it against the instructions the [c]ourt just gave you, you end up coming to a conclusion or verdict, really everything we've done in this courtroom since Monday is about that, very simple verdict, facts as you determine them to be, plus the law, which the Judge just gave, you put them together, you get your verdict.

(Continued)

6

The presumption of innocence afforded to a criminal defendant who proceeds to trial "is a basic component of a fair trial." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The presumption remains with the defendant "until the very moment when the jury agrees to a guilty verdict." *United States v. Dilg*, 700 F.2d 620, 626-27 (11th Cir. 1983); *see United States v. LaFontaine*, 847 F.3d 974, 979 (8th Cir. 2017); *Dodson v. United States*, 23 F.2d 401, 402 (4th Cir. 1928). The assertion by Government counsel in the rebuttal argument that the jury would realize that Suleitopa had been "stripped" of the presumption of innocence when it *began* deliberations was, we conclude, plainly improper, as this statement misstated the law.

Nevertheless, we also conclude that Suleitopa has not shown that the remark prejudicially affected his substantial rights so as to deprive him of a fair trial. The district court instructed the jury that the presumption of innocence attended a defendant "throughout" the trial and that it was the Government's burden to establish the defendant's guilt beyond a reasonable doubt, a determination the court instructed was the sole province of the jury based on its consideration of the evidence adduced at trial, not the statements and arguments of counsel. Given that the jury is presumed to have followed the district court's instructions, we conclude it unlikely the jury was misled into

---

When you do that in the deliberations process when you begin deliberating in this case, you'll realize that the defendant has been stripped of the presumption of innocence and his guilt has been laid bare.

J.A. 653.

7

thinking that Suleitopa's presumption of innocence was extinguished prior to its verdict. Additionally, Suleitopa concedes that the remark was isolated and has not suggested that the record lacks competent proof to establish his guilt or made any argument regarding diversion of the attention of the jury to extraneous matters. Further, although the defense did not invite the remark and the district court did not give a curative instruction, we find these factors of minimal relevance. Weighing all of these factors, we conclude that the remark did not affect Suleitopa's substantial rights. There is, we therefore conclude, no plain error requiring reversal.

Accordingly, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*